466 F.Supp. 595 (1979)
Richard RIDGEWAY, Victor M. Pascual, Angel N. Rivera, Clifton C. Burnett, Jose Ovalle, Angel A. Rivera, Adolph Taylor, Joseph Alatorre, Gerald K. Manuel, Jewel McClendon, Steven Ferrer, and Clifford Robinson, Individually and on behalf of all others similarly situated, Plaintiffs,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 134, an unincorporated association, Electrical Contractors Association of City of Chicago, an unincorporated association, and the Joint Arbitration Board, an unincorporated association, Defendants.
No. 74 C 3045.
United States District Court, N. D. Illinois, E. D.
January 26, 1979.
*596 Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.
Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for defendant Joint Arbitration Bd.

MEMORANDUM OPINION AND ORDER
CROWLEY, District Judge.
This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiffs are *597 Black and Hispanic electricians who claim that defendants' discriminatory practices have foreclosed their admission to the International Brotherhood of Electrical Workers (IBEW) thus prejudicing plaintiffs' opportunities for employment as electricians in the construction industry in Cook County, Illinois. Defendants are International Brotherhood of Electrical Workers, Local No. 134 (Local 134), Electrical Contractors Association of City of Chicago (Contractors), and Joint Arbitration Board (Board). Before the Court at this time is the Board's motion in support of its Sixth Affirmative Defense.
The Board's Sixth Affirmative Defense challenges the participation of certain plaintiff class members in any action brought pursuant to § 1981:

The Second Amended Complaint as it adverts to `Hispanics' complaining about disparate treatment of Caucasians are [sic] patently without standing [sic] to sue under the provisions of Title 42 U.S.C. § 1981.

The thrust of defendants' defense is that plaintiff Hispanics as Caucasians, or members of the white race, are without standing to pursue a § 1981 action. Race, not national origin, defendant argues, is the basis of a § 1981 claim and accordingly "Hispanics" like Irish-Americans or German-Americans do not come within the ambit of § 1981.
There exists, on this issue, a significant split in authority. Compare, e. g., Budinsky v. Corning Glass Works, 425 F.Supp. 786 (W.D.Pa., 1977); Kurylas v. U. S. Dept. of Agriculture, 373 F.Supp. 1072 (D.D.C., 1974), aff'd 169 U.S.App.D.C. 58, 514 F.2d 894 (1975); Kerckhoff v. Kerckhoff, 369 F.Supp. 1165 (E.D.Mo., 1974) with Lafore v. Emblem Tape & Label Co., 448 F.Supp. 824 (D.Colo., 1978); Ortega v. Merit Ins. Co., 433 F.Supp. 135 (N.D.Ill., 1977); and Miranda v. Clothing Workers, Local 208, 10 FEP Cases 557 (D. New Jersey, 1974). While the Supreme Court has held that § 1981 is applicable to racial discrimination against white persons [McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)], the precise question of the applicability of § 1981 to charges of discrimination by Hispanics arguably on grounds of national origin has not been addressed.
We take counsel, therefore, from the thoughtful analysis by Judge Hubert Will of this District in Ortega v. Merit Ins. Co., 433 F.Supp. 135 (N.D.Ill., 1977). In Ortega, Judge Will observed that

however inaccurately or stupidly, [Hispanics] are frequently and even commonly subject to a `racial' identification as `non-whites'. There is accordingly both a practical need and a logical reason to extend § 1981's proscription against exclusively `racial' employment discrimination to those groups of potential discriminatees. 433 F.Supp. at 139.
We are not unmindful of the practical problems we may encounter in application of this "pragmatic approach". However, § 1981 was enacted to eradicate disparate treatment between the white majority and clearly identifiable minorities. 433 F.Supp. at 139; Lafore v. Emblem Tape & Label Co., 448 F.Supp. 824 (D.Colo., 1978). Administrative expedience should not be raised as a shibboleth to foreclose effective enforcement of civil rights litigation.[1]
Accordingly, we find that plaintiff Hispanics' charge of discrimination comes within the aegis of § 1981.
Though not specifically raised by the Sixth Affirmative Defense, in its memoranda the Board argues that plaintiffs' Title VII claim is time barred. This issue was initially raised in defendants' objections to certification of the class. At the time we reserved resolution of the issue. Because plaintiff has responded to defendants' argument we will address it now. To fully appreciate defendants' assertion a summary of this case's lengthy history is necessary.
*598 On October 23, 1974, Richard Ridgeway, a black electrician, filed this action charging violation of § 1981 and Title VII. On September 8, 1975, Judge Decker dismissed Ridgeway's complaint against the Board for failure to exhaust administrative remedies. 42 U.S.C. § 2000e-5(f)(1). Judge Decker did not dismiss the § 1981 allegations as to the Board.
Meanwhile on August 24, 1974, Steven Ferrer, an Hispanic electrician, filed timely charges of discrimination against IBEW, Local 134 with the EEOC. Ferrer amended the charge to include the Board on June 13, 1975. In both the original and amended charges, July 13, 1974 was given as the date of the alleged violation.
Ferrer received his right-to-sue letter from the EEOC on March 18, 1976. On May 4, 1976, the complaint in this action was amended, with leave of court, naming Steven Ferrer as an additional plaintiff and including the Board as a named defendant.
The purpose of this amendment is apparent and uncontested. By including Ferrer as a named party, plaintiffs hope to revive the Title VII claim against the Board. The Board challenges plaintiffs' maneuver, however, arguing (1) that the amendment is improper under the federal rules and (2) regardless of the propriety of the Second Amended Complaint, Ferrer's amendment to his EEOC charge to include the Board was untimely and therefore the Board is not a proper defendant in this action. 42 U.S.C. § 2000e-5(f)(1).
Initially we observe that defendants' objection to the Second Amended Complaint as improper under Rule 15(d) Fed.R.Civ.P. is without merit. In 1963 Rule 15 was amended to provide that supplemental pleadings are permissible "even though the original pleading is defective in its statement of a claim for relief." Plaintiffs with inadequate complaints are no longer:
. . . needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief. Notes of Advisory Committee on Rules, 1963 Amendment.
Cf. Lynam v. Livingston, 257 F.Supp. 520 (D.Del., 1966).
Accordingly, defendant Board's objection to the filing of the Second Amended Complaint is overruled.
When enacting Title VII, Congress included a relatively short period of time in which an aggrieved party might initiate an action by filing a charge with the EEOC.[2] 42 U.S.C. § 2000e-5(e). A timely charge with the EEOC is a jurisdictional prerequisite. Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Plummer v. Chicago Journeyman Plumbers' Local Union No. 130, 452 F.Supp. 1127 (N.D.Ill., 1978). Further, although EEOC regulations provide for amendment with relation back they do not allow an untimely amendment to name a new defendant. 29 C.F.R. § 160.11; Landry v. Chicago, Rock Island and Pacific Railroad Company, 8 FEP Cases 498, 500-01 (N.D.Ill., 1974). Cf. Rule 15(c) Fed.R. Civ.P.
In the present case, though Ferrer's original charge before the EEOC was timely, the amendment, which purports to include the Board as a new defendant, was filed a substantial period of time after the statute of limitations had run. Plaintiffs counter by invoking the controversial "continuing violation" doctrine. Because defendants are, to this day, discriminating against Blacks and Hispanics in union membership and job placement, plaintiffs argue, the violation is continuing and, accordingly, the statute of limitations is tolled. In further support of plaintiff's position plaintiff, alleging a systemwide policy of discrimination, argues that the Board's participation was not immediately discernible. Ferrer amended the EEOC charge as soon as he became aware of the Board's involvement.
*599 The continuing wrong doctrine has received recent attention in both the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit. The purpose of the doctrine was stated in Appeal of American Airlines, and Trans World Airlines, Inc., 582 F.2d 1142 at 1148 (7th Cir., 1978):
The continuing violation theory was created to add some flexibility to an otherwise rigid jurisdictional filing requirement that might often result in the denial of Title VII remedies to employees who have suffered employment discrimination.
The doctrine, however, will not be applied to extend the statute of limitations beyond that time when active discrimination is taking place. Merely because a claimant is suffering the present effects of past discrimination will not free him from the strictures of the limitations period. Continuity of effect is not enough; "the critical question is whether any present violation exists." United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1976).
In Evans, Plaintiff alleged discrimination based on defendant's employment policy which precluded any married woman from working as a flight attendant. Plaintiff was forced to resign in 1968 because of this policy. She was rehired as a new employee in 1972, however, because though the policy was dropped subsequent to plaintiff's resignation, she was not covered by the reinstatement terms provided in the new collective bargaining agreement. As a new employee, plaintiff lost all seniority she had accumulated during her prior service. Plaintiff filed charges with the EEOC in February, 1973.
Upholding the District Court's dismissal of the action as time barred, the Supreme Court observed that plaintiff did not challenge the present neutrality of the system. In other words, plaintiff was not the victim of a present violation, but merely the present effects of a past violation. The facts in this case present a significantly different situation. Plaintiff does not argue that he is in some way affected by defendants' past single act of discrimination. Rather, plaintiff argues that defendants have and continue to discriminate against Blacks and Hispanics. There is, therefore, under the Evans standard, a present violation.
As observed in the Seventh Circuit in the Airlines Appeal, the Court in Evans did not have before it a case where a plaintiff filed a charge while the discriminatory policy was still effective. That is precisely the situation in the present case.
In Cox v. United States Gypsum, 409 F.2d 289 (7th Cir., 1969), the Seventh Circuit applied the continuing wrong doctrine where female employees were laid-off more than 90 days prior to filing with the EEOC. The action was not time barred, however, because plaintiff further alleged discriminatory recalls sufficient to show that the violation continued. This is a situation where the continuing wrong doctrine will therefore extend the limitations period. Appeal of American Airlines, Inc. and Trans World Airlines, Inc., 582 F.2d 1142 at 1149 (7th Cir., 1978).
Similarly, the facts of the present case are closely analogous to the layoffs followed by discriminatory recalls held to be continuing violations in Cox and reaffirmed in the Airlines Appeal. Every time defendants hire or admit to the union apprentice program or union membership an individual who is neither Black nor Hispanic, they "[perpetrate] the initial violation." Airlines Appeal, 582 F.2d p. 1150. Cf.: Karan v. Nabisco, Inc., 78 F.R.D. 388 (W.D.Pennsylvania, 1978); DuPree v. E. J. Brach & Sons, Division of American Home Products, 77 F.R.D. 3 (N.D.Ill., 1977).
Therefore, plaintiffs have adequately alleged a continuing violation and this action is not time barred. Defendants' motion in support of its Sixth Affirmative Defense is denied.
NOTES
[1] Though cited by neither party, this Court is mindful of its opinion in Vazquez v. Werner Continental Inc., 429 F.Supp. 513 (N.D.Ill., 1977). Upon further reflection, however, we conclude that a better approach is that which we have set out above.
[2] In Illinois, which has created a Fair Employment Practices Commission, the period of limitations is 210 days after the alleged unlawful employment practice or within 30 days after receiving notice of termination of the state proceeding, whichever is earlier.