Christine M. CARRILLO, Plaintiff,

v.

ILLINOIS BELL TELEPHONE COMPANY, Defendant.

No. 81 C 4410.

United States District Court, N. D. Illinois, E. D.

May 3, 1982.

Tully, Roddy & Weinstein, Chicago, Ill., for plaintiff.

Stephen S. Schulson, Francine Soliunas, Lincoln V. Janus, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

### GETZENDANNER, District Judge.

Plaintiff Christine Carrillo brings this action against her former employer, Illinois Bell Telephone Co., alleging discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e et seq., and 42 U.S.C. § 1981. As a Hispanic female, she alleges that this discrimination was based on her sex, race and national origin. She also seeks pendent jurisdiction over state law claims of breach of contract and intentional infliction of emotional distress.[1]

Carrillo claims that after she told her supervisors that she was pregnant, they began to subject her to harassment and discrimination, and that this led to her demotion, which was ostensibly for excessive tardiness. She contends that she was told to accept the demotion or lose her job, and that when she refused to accept the demotion, she was discharged. Lastly, she asserts that Illinois Bell has a policy requiring women employees who have recently had a child to return to work at the arbitrary decision of the company's physician, and that this discriminates against them on the basis of sex and pregnancy.

Illinois Bell has moved to dismiss, or in the alternative for summary judgment on, Carrillo's § 1981 claims, portions of her Title VII claims and her pendent state claims. For the reasons stated below, the motion is granted.

*Section 1981 Claims*

■ 42 U.S.C. § 1981 provides, in relevant part, that:

All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws ... as is enjoyed by white citizens ....

The statute encompasses claims of discrimination based upon race and alienage, *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). It does not, however, provide relief for claims of discrimination based on sex, *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235, 1278 (7th Cir. 1980) or based on national origin, *Plummer v. Chicago Journeyman Plumbers' Local Union No. 130*, 452 F.Supp. 1127, 1142 (N.D.Ill.1978), *rev'd on other grounds*, 657 F.2d 890 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).

On the issue whether discrimination against Hispanics constitutes discrimination based on race or on national origin, there is a substantial divergence of opinion. Some courts have viewed such discrimination as based solely on national origin and have dismissed Hispanics' claims under § 1981. *E.g. Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D.Pa.1978); *Vazquez v. Werner Continental, Inc.*, 429 F.Supp. 513 (N.D. Ill.1977)[2]; *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz.1975). The trend among the judges of this district has been to consider discrimination against Hispanics as racial discrimination. *E.g. Aponte v. National Steel Service Center*, 500 F.Supp. 198, 202–03 (N.D.Ill.1980) (Moran, J.); *Ridgeway v. International Brotherhood of Electrical Workers, Local No. 134*, 466 F.Supp. 595, 597 (N.D.Ill.1979) (Crowley, J.); *Garcia v. Rush-Presbyterian-St. Luke's Medical Center*, 80 F.R.D. 254, 262–64 (N.D.Ill.1978) (Leighton, J.); *Hernandez v. United Fire Insurance Co.*, 79 F.R.D. 419, 423 n. 2 (N.D. Ill.1978) (Bua, J., dicta); *Ortega v. Merit*

---

1. In Count VI, ¶ 11, plaintiff refers to a deprivation of "her Constitutional right of privacy in matters of procreation," but in her responsive memorandum, she denies that this was intended to state a separate constitutional claim.

2. Judge Crowley, the author of this opinion, has since reconsidered his position on this issue. *See Ridgeway v. International Brotherhood of Electrical Workers, Local No. 134*, 466 F.Supp. 595, 597 (N.D.Ill.1979).

*Insurance Co.*, 433 F.Supp. 135 (N.D.Ill. 1977) (Will, J.).

The courts extending § 1981 to discrimination against Hispanics have frequently relied on the following dicta from *Budinsky v. Corning Glass Works*, 425 F.Supp. 786, 788 (W.D.Pa.1977):

> The terms "race" and "racial discrimination" ... are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, ... Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and however inaccurately or stupidly, are frequently and even commonly subject to a "racial" identification as "non-whites." There is accordingly both a practical need and a logical reason to extend § 1981's proscription against exclusively "racial" employment discrimination to those groups of potential discriminatees.

As Judge Moran explained the issue in *Aponte, supra,*

> The plain meaning of the statute [§ 1981] attempts to remedy different treatment of whites and non-whites. Because Hispanics are frequently identified as "non-whites," this court believes that the scope of § 1981 is broad enough to extend to that group.

These and other cases that have considered Hispanics as a race for § 1981 purposes have recognized a legitimate problem in our society today. Those persons with Spanish surnames come from a wide spectrum of racial and ethnic backgrounds; their ancestors include Old-World Spaniards, New-World Indians, blacks, and mestizos of mixed ancestry. Indisputably, there are individual Hispanics who consider themselves as nonwhite, are frequently identified by others as nonwhite, and suffer discrimination not only on the basis of their Spanish surname but because of their "race," which is perceived as nonwhite. Nevertheless, both practically and logically,

it would be a mistake to conclude from this that all Hispanics, as a group, are subject to racial discrimination.

■ This court is convinced that the better rule is one that operates on a case-by-case basis, because such a rule recognizes that individual Hispanics may suffer racial discrimination and provides these individuals with a remedy under § 1981, but does not unnecessarily extend the scope of a statute that was never meant to redress discrimination based on national origin. This rule has been adopted by courts in this and other districts. *See, e.g., Lopez v. Sears, Roebuck & Co.*, 493 F.Supp. 801, 807 (D.Md.1980); *Plummer v. Chicago Journeyman Plumbers' Local Union No. 130*, 452 F.Supp. 1127, 1142 (N.D.Ill.1978), *rev'd on other grounds*, 657 F.2d 890 (7th Cir. 1980), *cert. denied* —— U.S. ——, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Martinez v. Hazelton Research Animals, Inc.* 430 F.Supp. 186, 187–88 (D.Md.1977); *Gomez v. Pima County*, 426 F.Supp. 816, 818–19 (D.Ariz.1976).

The decision in *Gomez* stands for the proposition that Mexican-Americans of brown race or color can sue under § 1981. The court there distinguished between discrimination against Hispanics that is racially motivated and that which is based on national origin:

> This court concludes that Mexican-American/Spanish-Surnamed individuals of brown race or color who allege that they have been discriminated against because of that race or color have stated a claim for relief under ... Section 1981, but have no claim under Section 1981 for discrimination based upon national origin.

Judge Robson relied on *Gomez* when he dismissed two Hispanics' § 1981 claims of national origin discrimination while retaining their racial discrimination claims in *Plummer, supra.* A similar result was had in the *Lopez* case, where the plaintiff alleged discrimination "based both on nationality (Hispanic) and race (brown)," 493 F.Supp. at 807.

The most complete analysis of the rule adopted by this court is set forth in the *Martinez* case:

2

[T]he court is of the opinion that the mere assertion that the plaintiff is an Hispanic male is an insufficient allegation of racial background to support an allegation of racial discrimination. While it may be true that Hispanic individuals may suffer discrimination closely akin to that experienced by members of the black race, it is not necessarily true of all Hispanic people. As noted by this court at the time of oral argument on this motion, many people of Hispanic origin cannot be classified as "nonwhites." Therefore, this court finds that the allegation that the plaintiff is an Hispanic male, without more, is an insufficient allegation of racial background to support an allegation of racial discrimination and thus to state a cause of action under 42 U.S.C. § 1981.

430 F.Supp. at 187–88. The court went on to find that the bare allegation of discrimination "because of ... ethnic and racial background" was insufficient; the court required specific allegations as to the plaintiff's racial background. *Id.* at 188.

■ Examining the complaint here in light of these cases, the court concludes that Carrillo has not adequately alleged her racial background in order to support her cause of action under § 1981. Her complaint identifies certain allegedly unlawful employment practices and then states, in Count V, ¶ 7:

Such practices of invidious racial and sexual discrimination serve to stigmatize Plaintiff on the basis of her race and national origin. (Hispanic)

3. The court notes, as have other courts, that the line between racial and national origin discrimination may prove difficult to draw in some cases. *See, e.g., Enriquez v. Honeywell, Inc.,* 431 F.Supp. 901, 904 (W.D.Okla.1977) ("The fact is the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible."); *Gomez v. Pima County,* 426 F.Supp. 816, 819 (D.Ariz.1976) ("It remains to be seen whether the two [discrimination on account of race and national origin] can be distinguished in this case."); and *Cubas v. Rapid American Corp.,* 420 F.Supp. 663, 666 n. 2 (E.D.Pa.1976) ("We are not aware of an authoritative and judicially manageable method for distinguishing between national origin discrimi-

Aside from this, Carrillo never identifies her race or asserts any other facts indicating her racial background. As the court has determined that the mere allegation of Hispanic does not bring a plaintiff within § 1981, Carrillo's claims under § 1981 must be dismissed. The court, however, grants her leave to file an amended complaint within 30 days, if she can adequately allege a nonwhite racial background to support a claim of racial discrimination.[3]

*Title VII Claims*

■ The scope of the judicial inquiry in a Title VII action depends on the content of the employee's charge to the Equal Employment Opportunity Commission (EEOC). The standard for determining whether the judicial claim is within the parameters of the EEOC charge is whether the former is "like or reasonably related to" the allegations of the charge and "growing out of such allegations." The EEOC charge, because it is typically drafted by the employee, must be given a liberal construction. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.), cert. denied, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Abraham v. Field Enterprises,* 511 F.Supp. 91, 93 (N.D.Ill.1980).

In her EEOC charge, Carrillo checked the boxes for discrimination based on sex and national origin. She elaborated on this by stating:

I believe that I have been discriminated against because of my sex (female) and nat. origin (Spanish) in that:

nation and racial discrimination when both may be present at the same time.") In this case, however, Carrillo did not check the box for race in her EEOC charge. While this omission has no jurisdictional impact on a § 1981 claim, it is indicative of how Carrillo herself perceived the nature of the discriminatory conduct of which she complains. And although her charge does allege that she was replaced by a "Caucasian female," in the context of the entire charge, the most likely interpretation of this phrase is that plaintiff was alleging that she was replaced by a non-Hispanic woman. In any event, problems of proof cannot absolve plaintiff of the need to adequately allege her nonwhite racial background.

and she then listed the instances of alleged discrimination: that after informing her supervisor of her pregnancy she began to receive harassment; that she was replaced by a Caucasian female; that she was demoted, ostensibly for excessive tardiness; and finally that she was discharged for not accepting the demotion.

In her Title VII complaint, Carrillo alleges that after she informed her supervisor of her pregnancy, he began to harass her by, among other things, "making repeated derogatory and racially scurrilous remarks to [her] regarding her pregnancy, unmarried state, and national origin"; that her demotion and discharge were "due to discrimination on the basis of sex, status of pregnancy, and national origin or race"; and that Illinois Bell's policy of requiring female employees to return to work from maternity leave upon the arbitrary decision of the company physician discriminates on the basis of sex and pregnancy. Count IV, ¶ 5. Defendant argues that the allegations of racial discrimination and those pertaining to the maternity leave policy are not fairly related to the content of the EEOC charge.

■ The challenge to the maternity leave policy does not flow from or grow out of the EEOC charge. The thrust of plaintiff's charge relates to her demotion and discharge, not to any policy that arbitrarily compels her to work. *Cf. Abraham v. Field Enterprises*, 511 F.Supp. 91, 93 (N.D.Ill. 1980) (granting partial summary judgment on claim of discriminatory failure to promote where EEOC charge alleged a discriminatory discharge, due to "insufficient nexus" between the two).

Moreover, the EEOC investigation and conciliation effort involved only Carrillo's charge that she had been terminated for refusing to accept a demotion, see Exhibit B to Defendant's Reply Memorandum. One of the important objectives of the administrative procedures under Title VII is to encourage the nonjudicial resolution of employment disputes. *Abraham, id.* To permit a Title VII plaintiff to circumvent the administrative procedures by expanding her judicial complaint beyond the scope of her EEOC charge would undermine this objective.

For these reasons, that portion of the complaint challenging the company's maternity leave policy is stricken as beyond the scope of the EEOC charge.

Carrillo's claim of discrimination based on race must also be stricken. In reaching this conclusion, the court does not rely on plaintiff's failure to mark the box for "race" on the EEOC form, as the Seventh Circuit has indicated that such a failure is not dispositive, *Jenkins, supra*, 538 F.2d at 168. Rather, the court relies on the factual allegations in the charge.

■ The only possible allusion to race in the body of the charge is Carrillo's allegation that she was replaced by a "Caucasian female." The court is not convinced that this statement refers to racial, as opposed to national origin, discrimination, because it is the only allegation in the charge that in any way relates to Carrillo's charge of national origin discrimination. As indicated above in the discussion of § 1981, in the context of the entire charge, and even allowing for a liberal construction of the charge, the court interprets "Caucasian" here to refer to a person of non-Hispanic or European ancestry rather than to a person of a different race from plaintiff.[4] This interpretation is further reinforced by the fact that the EEOC investigation was limited to charges of discrimination based on sex and national origin. The portions of the complaint that allege racial discrimination are therefore stricken.

### Pendent State Claims

Illinois Bell argues that Carrillo's state claims for wrongful discharge and intentional infliction of emotional distress fail to state a claim and should be dismissed. Alternatively, assuming the state claims are viable and cognizable under this court's pendent jurisdiction, Illinois Bell urges this

---

4. *Cf.* Webster's Third New International Dictionary, Caucasian: 2c, "chiefly Southwest: a person of white race *or European descent* . . . ." (emphasis added).

court to decline to exercise its pendent jurisdiction over the claims.

█ Initially, the court determines that there is a substantial doubt as to the viability of Carrillo's asserted state claims. As a general rule, Illinois does not recognize a cause of action for the termination of any employment contract at will. The one recognized exception is the relatively new tort of retaliatory discharge, which was judicially created in 1978. The Illinois Supreme Court, however, has thus far only applied this tort in two situations, where the discharge stems from an employee's filing of a workman's compensation claim, *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); and where the discharge is for cooperating with a local law enforcement agency's prosecution of another employee, *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

█ Carrillo argues that the tort of retaliatory discharge applies whenever the challenged discharge is for a reason that contravenes public policy, and that the public policy of Illinois is to prevent discrimination because of sex or national origin in connection with employment, Illinois Human Rights Act, Ill.Rev.Stat. ch. 68, ¶ 1–102. In *Palmateer*, however, after reasoning that the tort is available when a public interest is involved and unavailable when the interest at stake is private, the Illinois Supreme Court referred to a discharge in retaliation for opposition to sexual discrimination as involving "muddled" public and private interests. The court also noted that decisions in other states are split on the question whether the tort is available in such cases. *Palmateer, supra,* 85 Ill.2d at 131, 52 Ill.Dec. at 16, 421 N.E.2d at 879. Moreover, the very completeness of the statutory remedies for employment discrimination that are codified in the Human Rights Act, Ill.Rev.Stat. ch. 68, ¶ 1–101 et seq., argue against the application of the tort to employment discrimination cases.

It is thus not at all clear that Illinois courts will apply the tort of retaliatory discharge to allegedly discriminatory discharges.[5] Similarly, one Illinois court has held that the discharge of an employee under a contract at will is not the type of conduct that would give rise to an action for intentional infliction of emotional distress, *Palmateer v. International Harvester Co.*, 85 Ill.App.3d 50, 40 Ill.Dec. 589, 406 N.E.2d 595 (3d Dist. 1980), *aff'd on this point and rev'd on other grounds*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). Were this court to exercise pendent jurisdiction over Carrillo's state claims, it would be necessary to resolve novel and complex issues of state law.

█ Due in part to this uncertainty, this court declines to exercise its jurisdiction as to the state claims. Additionally, in a similar case involving a sex discrimination claim under Title VII and a state tort claim for the intentional infliction of emotional distress, Judge Shadur declined to exercise pendent jurisdiction, finding that judicial economy would not be served and that the state issues would predominate over the federal issues, *Hughes v. Marsh*, 27 Empl. Prac.Dec. ¶ 32,333 (N.D.Ill. July 21, 1981). He reasoned that:

> Hughes' state theory requires consideration of numerous factual questions irrelevant to her Title VII claim, questions that would significantly prolong the federal litigation. Proof of emotional damage and the specific acts Hughes alleges to have caused such damage would, in terms of time and difficulty, almost certainly "predominate" over Title VII issues. From a judicial economy standpoint, the fact that Hughes' Title VII claim would be considered by the Court but her state claim by a jury might very well lead to protraction and complexity, avoidable were each claim tried separately.

**5.** Another consideration is that the tort is for a *retaliatory* discharge. Even if the tort were available for a discharge allegedly in retaliation for the employee's opposing discriminatory employment policies, this does not support its application here, where no such retaliation is alleged.

These same considerations are applicable here.[6] Accordingly, the state claims are dismissed without prejudice to plaintiff's right to reassert those claims in a state court of competent jurisdiction.

### Conclusion

The motion to dismiss or for summary judgment is granted as to the § 1981 claims and the state claims in their entirety and as to those Title VII claims based on racial discrimination and defendant's maternity leave policy. The claims under Title VII alleging discrimination based on sex and national origin are the only claims remaining in the complaint. Plaintiff is given leave, however, to amend her complaint within 30 days to include a § 1981 claim of racial discrimination if she can adequately allege her nonwhite racial background.

---

6. Should plaintiff successfully amend her complaint to state a claim under § 1981, the jury/nonjury problem would be removed, but this development would not cause the court to reconsider its refusal to extend pendent jurisdiction to the state claims.