Osama ABDULRAHIM, Plaintiff,

v.

GENE B. GLICK COMPANY, INC., Defendant.

Civ. No. F 84–337.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 26, 1985.

**258**

Ernest M. Beal, Steven L. Jackson, Parrish, Knight, Jackson & Beal, Fort Wayne, Ind., for plaintiff.

Virginia Dill McCarty, James W. Beatty, Landman & Beatty, Indianapolis, Ind., Richard J. Thonert, Romero & Thonert, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's ("Glick") motion to dismiss and to strike certain paragraphs in plaintiff's ("Abdulrahim") complaint. In essence, Glick seeks to have these paragraphs and certain other claims dismissed for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss will be granted in part and denied in part.

This cause arises out of Abdulrahim's employment with Glick during the summer of 1982, and his attempt to be reemployed by Glick during the summer of 1983. Abdulrahim sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and 42 U.S.C. § 1981, for alleged discrimination on the basis of his race, color, and national origin, as well as Indiana common law theories of fraud and negligent misrepresentation. Glick has moved to dismiss several claims and paragraphs in the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). A complaint should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, *Conley* has never been interpreted literally. *Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 654 (7th Cir.1984). The test is whether a complaint contains either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). This court must consider the complaint in the light most favorable to the plaintiff and must resolve every reasonable doubt in favor of the claimant. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff*, 727 F.2d at 654.

Taking the allegations of the complaint as true, the relevant facts of this case are as follows. Abdulrahim is a United States citizen of Syrian descent whose "skin pigmentation is such that he may be perceived as 'non-white.'" In June, 1982, he began working for Glick as a maintenance-groundsperson at Glick's Cambridge Square I apartment complex. He worked

there until September 14, 1982. During the course of that employment, he was subjected to ethnic jokes and remarks by two members of Glick's management staff.

In September, 1982, Abdulrahim applied for two open maintenance-ground staff positions with Glick, but was not hired. He then spoke with Becky Altmanshofer, an executive manager of Glick, about future employment with Glick. Ms. Altmanshofer told Abdulrahim that she would take steps to insure that he was hired the following summer.

In the summer of 1983, Abdulrahim tried repeatedly to obtain summer employment with Glick, but was not rehired despite the fact that Glick had a past record of keeping summer help on their payroll year round and rehiring those people as summer workers the following year. While Abdulrahim was not rehired, other employees were rehired, and new employees were hired as well.

On June 21, 1983, Abdulrahim filed a charge with the Fort Wayne Metropolitan Human Rights Commission alleging discrimination on the basis of national origin. A right to sue letter issued on August 31, 1984, and Abdulrahim filed this suit on November 1, 1984. The suit alleges violations of Title VII in Count One, violations of § 1981 in Count Two, and fraud and negligent misrepresentation in Count Three.

Glick's motion to dismiss offers several grounds for dismissing particular portions of the complaint. The first seeks dismissal of the Title VII claim as it relates to the actions of Glick during Abdulrahim's 1982 employment on the grounds that the EEOC charge filed June 21, 1983 was untimely filed with respect to those claims. The second seeks dismissal of the § 1981 claim as it relates to the events of 1982 on the grounds of untimeliness as well. The third ground argues that charges of race and color discrimination in Count One should be dismissed because they were not alleged in the EEOC charge filed in June, 1983. The fourth ground urges dismissal of any Title VII or § 1981 claims arising out of the ethnic jokes and remarks directed at Abdulrahim on the grounds that there are no allegations of Glick involvement in or knowledge of the activity. The fifth ground seeks dismissal of the national origin claim under § 1981 because national origin is not a valid basis for a § 1981 claim, while the sixth ground argues that the race claim under Count Two fails because of a failure to allege that race was actually involved in Abdulrahim's case. Finally, the seventh ground challenges the common law counts, arguing that fraud cannot be based on a promise to perform in the future, while negligent representation is not a common law cause of action.

The court will consider each of these arguments in turn.

### Timeliness of the EEOC Charge and the 1982 Incidents

Glick has spent a large portion of its briefs arguing that the EEOC charge filed June 21, 1983 was beyond all applicable time limits for filing a Title VII claim about the discrimination occurring during Abdulrahim's 1982 employment, thus justifying dismissal of Count One's Title VII claim as to those 1982 events.

■ As Glick correctly points out, the EEOC charge was filed on June 21, 1983, approximately 280 days after his last date of employment, September 14, 1982. Indiana is a deferral state; it requires that a complaint be filed with the local civil rights commission within ninety days of a discriminatory employment practice, I.C. 22–9–1–3. Abdulrahim's filing was clearly untimely if he wished to press a Title VII claim as to the 1982 events. While Title VII allows for a filing with the EEOC up to 300 days after the discriminatory practice occurred in a deferral state, 42 U.S.C. § 2000e–5(e), the failure to file a timely charge with the local commission prevents the 300 day limitation period from applying, so that the usual 180 day limitation for non-deferral states would apply. *Battle v. Clark Equipment*, 524 F.Supp. 683, 686 (N.D.Ind.1981); *Gunn v. Dow Chemical Co.*, 522 F.Supp. 1172 (S.D.

Ind.1981). Thus, if Abdulrahim were asserting that the events of 1982 give rise to Title VII claims, the claims arising out of those events would be time-barred, and thus would be dismissed.

However, it is apparent that Abdulrahim *does not* seek to present the 1982 events as Title VII claims, but as events which are relevant background information to the May, 1983 failure to rehire, which is the substance of Abdulrahim's Title VII claim. He admits as much in his brief in opposition, and the EEOC charge indicates this as well. Several courts, including those cited by Glick, hold that time-barred claims can be used as "relevant background" to a timely-filed claim:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. *It may constitute relevant background evidence in a proceeding* in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (emphasis supplied). *See Valentino v. United States Postal Service*, 674 F.2d 56, 66 n. 11 (D.C.Cir.1982) ("employment practices in the time barred period may serve as relevant background evidence"); *Hooker v. Tufts Univ.*, 581 F.Supp. 98, 101 (D.Mass.1983); *James v. KID Broadcasting Corp.*, 559 F.Supp. 1153, 1155 (D.Idaho 1983). Some courts speak of the time-barred claims as useful in establishing a "continuing violation" of Title VII, *see Hazlewood School Dist. v. United States*, 433 U.S. 299, 310 n. 15, 97 S.Ct. 2736, 2742 n. 15, 53 L.Ed.2d 768 (1977); *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120–21 (7th Cir.1982); *Valentino;* others speak of the evidence as assisting in establishing a discriminatory intent or a pattern of discrimination, *see Hooker; Hunter v. Westinghouse Elec. Corp.*, 576 F.Supp. 704, 722 n. 16 (S.D.Ohio 1983); *Cormier v. P.P.G. Industries, Inc.*, 519 F.Supp. 211, 216 (W.D.La.1981), *aff'd*, 702 F.2d 567 (5th Cir.1983).

■ The message of this line of cases is that time-barred incidents of discrimination are not to be erased from a case because of their tardiness. Certainly, no relief can be obtained for those acts; the paragraphs alleging the 1982 events must be dismissed as Title VII claims. However, those events may be used as background to Abdulrahim's Title VII claim for failure to rehire; they may be probative evidence of Glick's intent. Thus, the court will grant the motion to dismiss those portions of the Title VII claim of Count One which pertain to the summer, 1982 events, but the court will deny the motion to strike the paragraphs setting forth the 1982 events.[1]

### Timeliness of § 1981 Claim for the 1982 Incidents

Glick argues that this action was filed November 1, 1984, more than two years after Abdulrahim's last date of employment during summer, 1982, and therefore Abdulrahim's § 1981 claim for the incidents during his summer employment is 1982 is time-barred.

In *Movement for Opportunity and Equality v. General Motors Corp.*, 622 F.2d 1235 (7th Cir.1980), the Seventh Circuit applied the Indiana two year statute of limitations for personal injuries (I.C. 34–1–2–1.5) to a § 1981 action. *Id.* at 1241–44.

---

**1.** Glick's motion is premised on the erroneous assumption that dismissal of a claim or paragraph also justifies striking it. However, motions to strike are governed by Rule 12(f), which allows a court to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Rule 12(f) motions are disfavored and are ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial. *Morrow v. South*, 540 F.Supp. 1104 (S.D.Ohio 1982); *Lirtzman v. Spiegal, Inc.*, 493 F.Supp. 1029 (N.D.Ill. 1980); 5 Wright & Miller, *Federal Practice and Procedure* § 1380 (1969). Here, the material is potentially relevant to the timely Title VII claim, and so is not the type of matter which this court can strike. For this same reason, the court will not strike any parts of the complaint despite granting some aspects of the motion to dismiss.

Abdulrahim concedes that this two year statute applies here. Therefore, any § 1981 claims arising out of the incidents occurring during the summer of 1982 are time-barred, and therefore will be dismissed. This ruling effectively moots the issue, raised in Glick's fourth ground for dismissal, of Glick's involvement in or knowledge of the ethnic jokes and remarks directed at Abdulrahim.

### Count One and the Scope of the EEOC Charge

 Glick urges dismissal of the race and color discrimination aspects of the Title VII claim in Count One because they were not alleged in the EEOC charge that Abdulrahim filed.

It is clear that the Seventh Circuit limits a Title VII plaintiff's civil action to discrimination "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976), *quoting Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971). The net result of this rule is that, if a particular type of discrimination is not alleged in the EEOC charge and cannot be inferred from it, then the plaintiff may not allege that theory in his Title VII suit. *See Clark v. Chrysler Corp.,* 673 F.2d 921, 931 (7th Cir.), *cert. denied,* 459 U.S. 873, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982); *Movement for Opportunity,* 622 F.2d at 1253.

An examination of the EEOC charge reveals that Abdulrahim checked only the box for national original as the basis for the alleged discrimination against him. This, of course, is not dispositive, *Jenkins,* 538 F.2d at 168. However, Abdulrahim again recites national origin when he says

in paragraph III of the charge: "I believe I have been discriminated against on the basis of my National Origin (Palestinian) inasmuch as...." The only references to race or color occur in paragraphs III(A) and III(D) of the charge: "A. ... Approximately September 7, 1982, I had been promised a transfer to Respondent's Farrington Apartments. On September 14, 1982, I learned that a white had been newly hired to fill the position"; "D. During May, 1983, Respondent hired a white employee to fill the position to which I should have been recalled."

The court concludes that the two references to white employees are insufficient to allege race or color discrimination in the charge. In *Carrillo v. Illinois Bell Tel. Co.,* 538 F.Supp. 793 (N.D.Ill.1982), the court reviewed a claim by a Hispanic woman in which the only possible allusion to race was her allegation that she was replaced by a "Caucasian woman." The *Carrillo* court found this reference insufficient to raise a race discrimination claim, but sufficient to raise a national origin claim, "because it is the only allegation in the charge that in any way relates to Carrillo's charge of national origin discrimination."[2] *Id.* at 798. Here, Abdulrahim's reference to white employees serves the same function—it provides a factual basis for the claim that Glick discriminated against him because of his national origin and selected a white employee. Take away the fact that the employee hired was white, and there is nothing to indicate that Glick had a discriminatory motive—it simply hired a new employee. But when one adds the fact that the employee was white and not Palestinian, then the possibility of discriminatory intent (on the basis of national origin) appears. In short, the intent manifest in the charge is the desire to press a national

---

**2.** Despite its reliance on *Carrillo,* the court specifically rejects Glick's interpretation of the case. Glick has misread *Carrillo* to hold that an allegation by a Hispanic concerning a "Caucasian" means that the court will always view the allegation as referred to a "non-Hispanic" woman. The *Carrillo* court found that Hispanics may be subject to race discrimination for § 1981 purposes, 538 F.Supp. at 796, and the

holding that the allegation about the Caucasian in Carillo's charge would be treated as alleging facts about a "non-Hispanic" was only because the court could find no allegation in the charge to support the national origin claim if it were to view the reference as implicating race. Glick is wrong to suggest that any sort of universal rule is implied in that analysis.

origin claim, and the reference to white employees is, in this case, more correctly read as a reference to "non-Palestinians." Therefore, the EEOC charge does not contain or infer allegations of race or color discrimination, so that those aspects of Abdulrahim's Title VII claim in Count One must be dismissed.

### Count Two National Origin Claim

 Glick's fifth ground for dismissal is that § 1981 does not recognize claims based on national origin, so that Count Two should be dismissed to the extent that it alleges discrimination on the basis of national origin.

The Seventh Circuit has held that discrimination on the basis of national origin does not support a § 1981 claim. *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984). Thus, the national origin aspect of Count Two must be dismissed.

Abdulrahim does not contest this conclusion, but rather tries to argue that the discrimination was in fact directed towards his alienage because he was not a United States citizen at the time of the discriminatory acts. However, the fact that one is not a citizen at the time of alleged discrimination does not mean that the discrimination is done because of one's alienage. Abdulrahim points to the allegations concerning the ethnic remarks and comments as evidence of "animus towards his alienage," yet those incidents (which are time-barred and do not support a claim in themselves) strongly indicate that the animus was towards Abdulrahim's nationality and not his status as an alien. The Glick management personnel who called Abdulrahim a "camel jockey" would not do so because he was an alien, but rather because he was a Syrian. The court doubts that those personnel would have avoided calling Abdulrahim ethnic names simply because he had a certificate of naturalization. There is nothing in the complaint which indicates that the alleged discrimination was premised upon or directed toward Abdulrahim's alienage at the time of the discriminatory acts. The

national origin and alienage aspects of Count Two will therefore be dismissed.

### Count Two Race Discrimination Claim

 Glick argues that the race discrimination aspect of Count Two should be dismissed because Abdulrahim has failed to allege that race was really involved here, and that Syrians and/or Palestinians are not a separate race which can claim racial discrimination under § 1981.

In *Anooya*, the Seventh Circuit specifically declined to decide whether to adopt the expansive definitions of "racial discrimination" set forth in *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir.1979), and *Gonzalez v. Stanford Applied Engineering*, 597 F.2d 1298, 1300 (9th Cir.1979), because "plaintiff does not plead special facts that equate the evil of racial discrimination as understood by the drafters of section 1981 to the alleged national-origin animus experienced by persons of Iraqi descent." 733 F.2d at 50 n. 5. The *Anooya* plaintiff apparently had referred only to his Iraqi background in making his § 1981 claim.

However, the concurring opinion of *Anooya* states that "[a] reference in the allegation to skin color would, of course, change the case." 733 F.2d at 51 n. 1 (Cudahy, J., concurring). This does not conflict with the majority, as the majority itself states that "The legislative history of the statute [§ 1981] 'clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality' ... One such category of rights afforded a federal remedy is discrimination in employment on the basis of race or color." 733 F.2d at 50, 50 n. 2, *quoting Georgia v. Rachel*, 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966). Thus, *Anooya* stands for the proposition that an allegation concerning national origin alone is insufficient for § 1981 purposes, but an allegation of discrimination on the basis of skin color is enough.

The cases cited by Glick do not alter this conclusion. In *Ibrahim v. N.Y. State Dept. of Health*, 581 F.Supp. 228 (N.D.N.Y.

1984) and *Saad v. Burns Internal Security Services, Inc.*, 456 F.Supp. 33 (D.D.C. 1978), the Arab plaintiffs made no allegation concerning their skin color. Those courts rejected the proposition that Arab ethnic groups are a separate race. In *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977), a Slavic plaintiff's claim of racial discrimination was rejected because Slavs are not commonly subject to a "racial" identification as a "nonwhite." The essential factor missing in all three cases is an allegation concerning skin color.

Here, Abdulrahim alleges that his skin color is such that he may be perceived as "non-white." This provides the element missing in the previous cases involving Arabs, and invokes the *Anooya* concurring opinion's analysis that an allegation referring to skin color is sufficient to make out a § 1981 case. Whether the case is one of discrimination on the basis of race, or simply one on the basis of color, is an interesting legal question that has little impact on the case because Abdulrahim has adequately alleged a § 1981 claim. Because color is so closely tied to racial identity (note that although courts interpret § 1981 as banning "racial" discrimination, the statute itself speaks in color terms: "all persons ... shall have the same rights ... as is enjoyed by white citizens"), the court believes that the motion to dismiss must fail. Even if Glick's motion was granted, and the race discrimination aspect of Count Two was dismissed, the victory would be pyrrhic at best, as the claim based on color is clearly adequate.

### State Common Law Claims

Glick seeks dismissal of the state common law claim because the basis of the claim—Becky Altmanshofer's promise to help Abdulrahim get rehired the following summer—is a promise to do a *future* act. Promises to do an act in the future do not constitute fraud. *Sachs v. Blewett*, 206 Ind. 151, 185 N.E. 856 (1934); *Rempa v. LaPorte Production Credit Union*, 444 N.E.2d 308, 314 (Ind.App.1983). Abdulrahim agrees with this analysis, and so the fraud claim will be dismissed.

Nor can the fraud claim survive under a "constructive fraud" theory. Indiana courts define constructive fraud as acts from which a defendant derives an unconscionable advantage, *Beecher v. City of Terre Haute*, 235 Ind. 180, 132 N.E.2d 141 (1956), a breach of confidence coupled with an unjust enrichment which shocks the conscience, *Voelkel v. Tohulka*, 236 Ind. 588, 141 N.E.2d 344 (1957), a breach of duty which the law declares fraudulent because of a tendency to deceive, injure the public interest, or violate public or private confidence, *Blaising v. Mills*, 176 Ind.App. 141, 374 N.E.2d 1166 (1978), or the making of a false statement in the context of a confidential relationship, *Coffey v. Wininger*, 156 Ind.App. 233, 296 N.E.2d 154 (1973). None of those situations are present here. A constructive fraud theory would fail as well.

Glick argues that Abdulrahim's negligent misrepresentation claim must fail because "Glick knows of no such separate Indiana common law claim or cause of action."

The elements of the tort of negligent misrepresentation are set forth in *Restatement (Second) of Torts*, § 552(1):

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Three Indiana courts have held that Indiana does not recognize the tort of negligent misrepresentation. *See Wilson v. Palmer*, 452 N.E.2d 426, 429 (Ind.App.1983) (claim against title company for failure to discover demolition order in title search); *Essex v. Ryan*, 446 N.E.2d 368, 372 (Ind.App.

**264**

1983) (claim against surveyor for inaccurate survey); *English Coal Co. v. Durcholz*, 422 N.E.2d 302, 310 (Ind.App.1981) (counterclaim by mineral leaseholder against coal strip miner). However, in a case more factually analogous to this one, the court held that an employer who offered a job in Florida to an employee which was not available when the employee reported to work there could be liable for negligent misrepresentation. *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 629 (Ind.App.1983).

From the facts of this case, it is possible that Glick "supplied false information" (through its agent, Becky Altmanshofer) to Abdulrahim that steps would be taken to insure his reemployment the following summer, and that Abdulrahim relied on that information to his detriment. The *Eby* case convinces this court that such a tort can be a viable legal theory in cases arising out of statements made in the course of an employment relationship. Therefore, the motion to dismiss the negligent misrepresentation claim must fail.

A review of the consequences of this court's ruling on the motion to dismiss reveals that Abdulrahim has the following claims remaining: a Title VII claim for discrimination on the basis of national origin for the failure to rehire him in 1983; a § 1981 claim for race and color discrimination for that failure to rehire; and a negligent misrepresentation claim for the promise to take steps to ensure rehiring in 1983 allegedly made by Becky Altmanshofer.

For the above stated reasons, the court hereby GRANTS the defendants' motion to dismiss all Title VII claims in Count One and all § 1981 claims in Count Two for any incidents of discrimination occurring during plaintiff's 1982 summer employment; the Title VII claims of Count One for race and color discrimination in the 1983 failure to rehire; the national origin discrimination claim of Count Two; and the fraud claim of Count Three. The motion is hereby DENIED in all other respects.