John D. APONTE, Plaintiff,

v.

NATIONAL STEEL SERVICE CENTER, Defendant.

No. 79 C 315.

United States District Court,
N. D. Illinois, E. D.

Nov. 5, 1980.

Henry C. Krasnow, Susan Vance, Mandel, Lipton & Stevenson, Chicago, Ill., for plaintiff.

John C. Berghoff, Chadwell, Kayser, Ruggles, McGeet, Hastings, Ltd., Chicago, Ill., Ralph T. DeStefano, Richard R. Riese, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiff brings this six–count complaint alleging violations of various antidiscrimination statutes, ERISA and the Illinois Wage Payment and Collection Act. The defendants have filed a motion to dismiss each of the counts pursuant to FRCP 12(b) or for summary judgment. The parties have entered into a stipulation regarding the ERISA claims and they are no longer contested.

According to his complaint and administrative charges, plaintiff Aponte, a Mexican American, was employed as a "set up man"

with defendant National Steel Service Center Inc., a steel processing facility of Evanston, Illinois. His employment began on April 4, 1966 and was continuous until his discharge on December 22, 1978. Aponte was, until December 18, 1978, excused from overtime responsibilities because he attended school, although mandatory overtime was incorporated in the company's collective bargaining agreement on October 25, 1978. When he was advised that overtime would be required after December 18, the plaintiff submitted a medical report to the employers stating that he was unable to work overtime. On December 20, 1978, the plaintiff was injured at work and was taken to the hospital. The plaintiff's physician stated that he was unable to work for two weeks. In a letter dated December 22, 1978, the company stated that it could not retain him unless he worked overtime. The letter made his discharge effective on that date.

The plaintiff submitted his claim to arbitration consistent with the company's collective bargaining agreement. The arbitrator found that the plaintiff's refusal to work overtime was sufficient cause for dismissal. The arbitrator, however, changed the effective date of discharge from December 22, 1978 to January 24, 1979.

During the course of plaintiff's employment, he filed several charges with the Illinois Fair Employment Practices Commission (FEPC) and the Equal Employment Opportunity Commission (EEOC). In March, 1978, the plaintiff filed a charge with FEPC complaining of discriminatory treatment and retaliation for filing earlier charges. The company and plaintiff entered into a settlement agreement on June 5, 1978. On September 6, 1978, the plaintiff filed an EEOC charge alleging harassment and discrimination in failing to promote him. The plaintiff specifically objected to his probation and his alleged constant harassment by his foreman and leadman. These charges were settled in November, 1978. The plaintiff agreed not to pursue a Title VII lawsuit in exchange for the defendant's promise not to penalize him in any "future consideration for wage increases, promotions, transfers, or other employment related matters" for filing the charge. EEOC issued a right to sue letter on plaintiff's allegations that he had been denied a promotion.

After his discharge, plaintiff filed charges with both the EEOC and FEPC alleging that his termination was in retaliation for filing previous charges. On March 23, 1979, EEOC issued a right to sue letter on the charge, finding that there was no reasonable cause to believe the allegations made in the charge were true.

Aponte originally filed this federal court action *pro se*. Counsel was appointed and the most recent second amended complaint was filed on plaintiff's behalf on June 27, 1979.

*Counts I & II*

Plaintiff brings Counts I and II under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* commonly known as Title VII. Count I is brought under § 703 of the Act which attempts to remedy discrimination on the basis of race, color, religion, sex or national origin.[1] Count II is brought under § 704 which provides in part a remedy for retaliatory discharge based upon previous filing of employment discrimination charges.[2]

---

1. § 703 provides in relevant part:
   Unlawful employment practices–Employer practices
   (a) It shall be an unlawful employment practice for an employer –
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. The relevant portion of § 704 states:
   Other unlawful employment practices–Discrimination for making charges, testifying,

■ To maintain a federal court action a party must have filed a timely charge with the EEOC and then act upon the Commission's notice of the right to sue in federal court. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

The defendant challenges this court's subject matter jurisdiction of harassment claims that are included in both counts. The defendant argues that the plaintiff has not gone through the proper administrative procedures regarding these claims and cannot raise them for the first time in this action.

In *Jenkins v. Blue Cross Mutual Hospital Ins. Co.*, 538 F.2d 164 (7th Cir.) (en banc) *cert. denied* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976) the Seventh Circuit defined the standard courts should follow in evaluating whether federal court actions properly arise from the administrative proceedings:

> The complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations. *Id.* at 167.

Because most claims at the administrative level are filed *pro se*, courts have been solicitous of Title VII plaintiffs. *See e. g. Willis v. Chicago Extruded Metals Co.*, 375 F.Supp. 362 (N.D.Ill.1974). In *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court observed that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiated the process." *See also Garcia v. Rush–Presbyterian–St. Lukes Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978); *Willis v. Chicago Extruded Metals Co., supra.*

Using those guidelines, this court turns to the specific claims of plaintiff. Count II alleges retaliatory discharge, harassment in the form of abusive language, threats of personal injury and property damage, unnecessary surveillance and more strenuous work assignments than other employees in similar job classifications. Plaintiff's EEOC charge and right to sue letter specify retaliatory discharge under § 704.

■ It is undisputed that the retaliatory discharge claims are properly before this court. It is less clear whether the harassment claims belong here. In his pleadings, plaintiff has alleged harassment without outlining how the harassment related to the plaintiff's eventual retaliatory discharge. If the alleged harassing acts were part of a design to force the plaintiff out because of his prior charges with various state and federal agencies, a reasonable relation between the charge and complaint exists. If the harassment stemmed from motives entirely unrelated to plaintiff's previous charges, the relationship is less obvious.

The Seventh Circuit has made it clear that complaints should be liberally construed. Because this court believes that there is a set of facts which can show a reasonable relation between the charge and complaint, it will be upheld. The motion to dismiss Count II is denied.

Count I can only be maintained either because the retaliatory termination charge is broad enough to encompass § 703 claims of harassment or because the November, 1978 settlement agreement was not complied with.

■ The plaintiff assumes that his alleged harassment stemmed from national origin discrimination in violation of § 703. Once again, he does not plead any relation between these alleged violations and those

assisting, or participating in enforcement proceedings
(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training program, to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

he brings under § 704. Absent Count II, this court would be reluctant to include these claims, particularly in light of a settlement agreement which was entered into by the parties on at least the abusive language and strenuous work assignment issues. *See EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977) *cert. denied* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978). Since the conduct complained of is before the court in Count II, however, a refusal to consider those same matters under Count I would be parsing it too fine. The motion to dismiss Count I is denied.

*Count III*

The defendant urges that this court lacks jurisdiction to entertain the plaintiff's discrimination claim under 42 U.S.C. § 1981 of the Civil Rights Act. That section provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes, licenses and exaction of every kind and to no other.

■ It is settled that § 1981 includes discrimination based upon race and alienage. *Takahashi v. Fish and Game Comm'n.*, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). There is considerable debate, however, about whether Latinos come within the coverage of § 1981. The dispute essentially centers upon whether discrimination against Latinos is characterized as racial discrimination or national origin discrimination. Those courts that have held that § 1981 does not encompass the claims of Hispanics have viewed them as ones of national origin. *See e. g. Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D.Pa. 1978); *Plummer v. Chicago Journeyman Plumbers' Local 130*, 452 F.Supp. 1127 (N.D. Ill.1978); *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 15 (E.D.Pa.1975); *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz.1975).

■ The courts which have extended coverage of the statute to Latinos have found a "degree of identity between claims of national origin or ethnic background discrimination and racial discrimination." *Garcia v. Rush–Presbyterian–St. Luke's Medical Center*, 80 F.R.D. 254 (N.D.Ill. 1978). *See e. g. Davis v. County of Los Angeles*, 566 F.2d 1334 (9th Cir. 1977) *vacated as moot* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971). This approach has also been adopted by Judges Crowley, Leighton and Will of this district. *See Ridgeway v. International Brotherhood of Electrical Workers*, 466 F.Supp. 595 (N.D.Ill.1979); *Garcia v. Rush–Presbyterian–St. Luke's Medical Center, supra; Ortega v. Merit Insurance Co.*, 433 F.Supp. 135 (N.D.Ill.1977). This court is persuaded by the often quoted rationale set out in *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977):

The terms "race" and "racial discrimination" may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly–accepted albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a "race" susceptible to "racial discrimination;" Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and however, inaccurately or stupidly, are frequently and even commonly subject to a "racial" identification as "non–whites." There is accordingly both a practical need and a logical reason to extend § 1981's proscription against exclusively "racial" employment discrimination to those groups of potential discriminatees. *Id.* at 788.

The plain meaning of the statute attempts to remedy different treatment of whites

and non–whites. Because Hispanics are frequently identified as "nonwhites," this court believes that the scope of § 1981 is broad enough to extend to that group.

■ The defendant further maintains that the statute of limitations bars the plaintiff's claims regarding the company's failure to promote him. § 1981 itself contains no statute of limitations. The practice has been to refer to the most analagous state law for guidance on when a claim is barred. The Seventh Circuit has determined that *Ill.Rev.Stat.* Ch. 83, § 16 providing a five year statute of limitations for civil actions not otherwise provided for controls here. *Waters v. Wisconsin Steel Works of International Harvester Co.*, 427 F.2d 476, 488 (7th Cir.) *cert. denied* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

The plaintiff argues that the company's failure to promote him was a "continuing" violation. This court will consider those violations which occurred within the specified five year period. Thus, plaintiff's claims that the company failed to promote him in 1971 and 1972 "may not themselves constitute the basis for imposition of liability." *United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The court will look to the prelimitations period, however, as "relevant background evidence regarding, e. g. motivation for post–limitation period practices." *See Garcia v. Rush–Presbyterian–St.Luke's Medical Center, supra* at 254.

*Count IV*

■ Count IV alleges that the defendant improperly discriminated against the plaintiff in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* Although the plaintiff submitted his right to sue letter with the court, he failed to include the statement of the charges filed with the Department of Labor. The defendant argues that this failure requires dismissal of this count since the company is unable to determine whether the federal court charges are the same as those brought before the administrative agency. If not, defendant insists, he was denied due process by not having the oppor-

tunity to meet plaintiff's charges at the administrative level.

The Age Discrimination Act requires that the Department of Labor attempt to eliminate any alleged unlawful practice by "informal methods of conciliation, conference and persuasion." 29 U.S.C. § 626. The Department unsuccessfully attempted to conciliate in this case. The defendant was thus informed of plaintiff's charges and is in a position to know how closely they resemble the federal claims. Without the statement of charges, this court is unable to determine whether there is a material variance between the charges and the complaint. Count IV is dismissed. If the court is later presented with this information, it will evaluate it in accordance with the rule set out by the Seventh Circuit in *Jenkins v. Blue Cross Mutual Hospital Ins. Co.*, 538 F.2d 164 (7th Cir. 1976) (en banc) and discussed in Counts I and II.

*Count V*

■ The plaintiff brings a claim under the Illinois Wage Payment and Collection Act, *Ill.Rev.Stat.* Ch. 48, § 39m–1 *et seq.* (1974) alleging that he was not paid his "final compensation" after his termination on December 22, 1978. Pursuant to the parties' collective bargaining agreement, the plaintiff sought arbitration regarding his dismissal. The arbitrator determined that the plaintiff's termination was effective on January 24, 1979. The plaintiff alleges that he received no compensation for the period after December 22, 1978.

The defendant challenges the plaintiff's ability to bring this count, arguing that the Act can only be enforced by the Department of Labor and does not provide a private right of action. The plain meaning of the statute belies defendant's contentions. Section 39m–11(c) provides:

Nothing here shall be construed to prevent any employee from making complaint or prosecuting his own claim for wages.

The defendant has not cited any authority which supports his novel interpretation of the statute. It is clear that the statute does

not preclude a private right of action by the employee. Since the plaintiff states a claim within the purview of the Illinois statutory structure, the defendant's motion to dismiss Count V is denied.

For the above stated reasons, the defendant's motion to dismiss Count IV is granted. The defendant's motion to dismiss Counts I, II, III and V is denied.

This decision is reached with a considerable sense of frustration. The tangled relationship between one employee and his employer, relating solely to the continued employment relationship, has been the subject of an arbitration, an FEPC proceeding carried through the administrative process to settlement, an EEOC proceeding carried through the administrative process to settlement, subsequent administrative proceedings which led to the conclusion that the claims did not have a reasonable basis, the filing of a federal court action, appointment of counsel, and the filing of amended pleadings resting upon Title VII, § 1981 of the Civil Rights Acts, age discrimination legislation and Illinois law. And, years later, we have only resolved the pleading questions.

We have created an administrative, legislative and judicial labyrinth which serves no one well. During a period when employment relationships gave rise, for different reasons, to passionate disputes, private arbitration and administrative resolution through the National Labor Relations Board arose as a reasonably expeditious means of resolving those disputes with justice and finality.

Those means do not exist here. The aggrieved employee has multiple avenues to pursue, all strewn with technical obstacles and all of which may postpone any possible relief into the indefinite future. The result is a festering sense of injustice. The employer settles one claim and finds itself faced with a variety of others, all requiring it to employ professional help to guide it through, and to preserve its rights, in the various proceedings in which it finds itself a target. Society one way or another, provides the resources for both sides until the grievances are ultimately resolved. This court is in the uncomfortable position of being a necessary participant.