**Sarvadaman Jasubhai BANKER, a/k/a Sam Banker, Plaintiff,**

**v.**

**TIME CHEMICAL, INC., Defendant.**

No. 82 C 5891.

United States District Court,
N.D. Illinois, E.D.

Dec. 6, 1983.

Gail M. Epstein, Michael A. Reiter, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Julie Badel, McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Three years ago this court held that the protections offered by 42 U.S.C. § 1981 of the Civil Rights Act extended to Hispanics. In *Aponte v. National Steel Service Center*, 500 F.Supp. 198 (N.D.Ill.1980), this court wrote:

> The plain meaning of the statute attempts to remedy different treatment of whites and non-whites. Because Hispanics are frequently identified as "non-whites," this court believes that the scope of § 1981 is broad enough to extend to that group.

*Id.* at 203–3. Presently before the court is the issue of whether East Indians are also

covered by section 1981. The court finds that they are.

## FACTS

Plaintiff Sarvadaman Jasubhai Banker, a citizen of the State of Illinois, is of East Indian ancestry.[1] In September, 1975, Time Chemical, Inc. (Time) hired Banker as a technical director. While so employed Banker was in charge of his department and several other employees. One year after being hired Banker was assigned to work as a chemist responsible for quality control. He considered this a demotion. He was replaced as technical director by a white American. In January, 1977, Banker's salary was reduced to an amount less than he received when originally hired. Banker was the only employee in the laboratory whose salary was reduced. He continued to work as a chemist for Time until January, 1978, when his employment was terminated.

Banker filed an action against Time in Illinois circuit court, alleging discriminatory firing. Subsequent to filing that action Banker brought suit in this court against Time under 42 U.S.C. § 1981. Banker alleged that his demotion, salary reduction and firing were discriminatorily motivated due to his "racial identification and national origin." Defendant moves to dismiss the action, claiming that East Indians are not covered by section 1981. Defendant also argues that plaintiff insufficiently alleged his race in the complaint and that the statute of limitations has run on a number of plaintiff's claims. Finally, defendant asks this court to dismiss this action in deference to a pending state court action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### *Section 1981 Claim*

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

---

1. Plaintiff's allegations are accepted as true for the purposes of this motion to dismiss. *See*

*Brandt v. Grounds*, 687 F.2d 895, 896, n. 1 (7th Cir.1982).

enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. This section has been held to prohibit racial discrimination in employment. *See Waters v. Wisconsin Steel Works of International Harvester Co.*, 427 F.2d 476, 482 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). The section, however, is not necessarily directed to discrimination against a different "race" in the technical sense. *See Keating v. Carey,* 706 F.2d 377, 384 (2d Cir.1983); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir. 1979). *See generally Aponte v. National Steel Service Center,* 500 F.Supp. at 202–03. Although discrimination based on national origin alone is generally not considered to be within the ambit of section 1981, *see Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968) (a § 1982 case applying to § 1981 through *Runyon v. McCrary,* 427 U.S. 160, 171, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1976)); *Plummer v. Chicago Journeyman Plumbers Local Union No. 130,* 452 F.Supp. 1127, 1142 (N.D.Ill.1978), *rev'd on other grounds,* 657 F.2d 890 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982), this court, in *Aponte,* found "a degree of identity between claims of national origin or ethnic background discrimination and racial discrimination." *Aponte v. National Steel Service Center,* 500 F.Supp. at 202. *See Garcia v. Rush-Presbyterian-St. Luke's Medical Center,* 80 F.R.D. 254, 263 (N.D.Ill.1978). In *Aponte* this court, in finding that Hispanics were covered by section 1981, was persuaded by the dicta in *Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1977), which disputed the validity of rigid racial classifications in section 1981 actions. The court in *Budinsky* wrote:

> The terms "race" and "racial discrimination" may be of such doubtful socio-

logical validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a "race" susceptible to "racial discrimination;" Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and, however inaccurately or stupidly, are frequently and even commonly subject to a "racial" identification as "non-whites." There is accordingly both a practical need and a logical reason to extend § 1981's prescription against exclusively "racial" employment discrimination to these groups of potential discriminatees.

This view of race in the context of actions brought under section 1981 has been directly cited and accepted by a number of courts in this district. *See Badillo v. Central Steel and Wire Co.,* 89 F.R.D. 140, 142 (N.D.Ill.1981) (Shadur, J.); *Aponte v. National Steel Service Center,* 500 F.Supp. at 202–3 (Moran, J.); *Garcia v. Rush-Presbyterian-St. Luke's Medical Center,* 80 F.R.D. 254, 263–64 (N.D.Ill.1978) (Leighton, J.); *Ortega v. Merit Insurance Co.,* 433 F.Supp. 135, 138–39 (N.D.Ill.1977) (Will, J.). *See also Carrillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793, 796 (N.D.Ill. 1982) (Getzendanner, J.).

Defendant's argument stems from the language in *Budinsky.* Defendant argues that East Indians, unlike Hispanics, are not "traditional victims of group discrimination," not "commonly subject to a 'racial' identification as 'non-whites,'" and thus not within the scope of section 1981 as delineated in *Budinsky.* In support of this argument defendant claims that East Indians in this country generally have impressive educational backgrounds and prestigious positions with high financial remuneration. *See generally* Saran, *Cosmopolitans from India,* Society, Sept. 10, 1977, 65, 67. This evidence, defendant claims,

when contrasted with the relatively low educational, professional and economic positions of Hispanics and blacks, indicates that East Indians are not the victims of traditional discrimination in this country. Defendant also argues that East Indians are anthropologically considered caucasians and have not been subject to racial identification as non-whites.

Defendant's arguments miss the point enunciated in *Budinsky* and accepted in this district. Fixed and rigid racial classifications have been rejected because of their doubtful scientific and sociological validity, *see Budinsky v. Corning Glass Works*, 425 F.Supp. at 788, and the dynamic biological, anthropological and historical notions surrounding the idea of race. *See Ortiz v. Bank of America*, 547 F.Supp. 550, 567 (E.D.Cal.1982); T. Gossett, *Race—The History of an Idea in America* (1963). "To be blunt, the court should not be in the business of permanently classifying groups of people, not just because it is unpalatable—but because it is untrue." *Ortiz v. Bank of America*, 547 F.Supp. at 568. Instead of a rigid approach based on specifically quantitative criteria, such as mean educational achievements, mean earnings or anthropological racial classifications, courts following the *Budinsky* rationale have employed a pragmatic and flexible approach. *See Id.* at 567, *Budinsky v. Corning Glass Works*, 425 F.Supp. at 788. This approach analyzes all relevant factors in determining whether members of a group are "discriminated against because they are somehow different as compared to 'white citizens.'" *Manzanares v. Safeway Stores, Inc.*, 593 F.2d at 571.

Viewed in light of these principles, defendant's argument must fail. That the economic level of East Indians has reached a certain level and that East Indians are classified "caucasians" are in no way dispositive. A group can be discriminated against as non-whites despite achieving as a group a measure of wealth and success. Groups classified as caucasians have frequently been thought racially inferior to the majority. *See Ortiz v. Bank of America*, 547 F.Supp. at 565 ("Both the German and Irish immigrants ... were believed by many to be 'racially' inferior."); T. Gossett, *Race—The History of an Idea in America*, at 287–309. The vicious anti-Semitism directed against the Jews of Nazi Germany, for example, was racially motivated despite fulfillment of both conditions alleged here by defendant.

■ A number of courts have allowed section 1981 actions to be brought by East Indians: some explicitly finding East Indians covered [2] and some implicitly finding so by determining the validity of the cases on their merits.[3] This court agrees with those cases. As stated in *Aponte*, the plain meaning of section 1981 is to remedy the different treatment of whites and non-whites. Because East Indians are frequently identified as "non-whites," the scope of section 1981 is broad enough to extend to that group.

■ Defendant raises two other issues concerning the section 1981 claim. First, defendant states that plaintiff has not alleged that he is either non-white or non-caucasian. Defendant cites *Carrillo v. Illinois Bell Telephone Co.*, 538 F.Supp. 793, 796–97 (N.D.Ill.1982) for the proposition that section 1981 plaintiffs are required to identify their non-white racial background in bringing a claim under section 1981.

---

**2.** *See Baruah v. Young*, 536 F.Supp. 356, 362–63 (D.Md.1982); *Anandum v. Ft. Wayne Community Schools*, 19 Fair Empl.Prac.Cas. (BNA) 773, 775 (N.D.Ind.1978) (Asian Indian alleged to be non-Caucasian); *Tayyari v. New Mexico State University*, 495 F.Supp. 1365, 1369–70 (D.N.M. 1980) (Iranian plaintiff); *Khawaja v. Wyatt*, 494 F.Supp. 302, 304–5 (W.D.N.Y.1980) (Pakistani plaintiff). *But see Trehan v. IBM Corp.*, 24 Fair Empl.Prac.Cas. (BNA) 443 (S.D.N.Y.1980) (holding white East Indian not to be covered by section 1981).

**3.** *Shah v. Halliburton Co.*, 627 F.2d 1055 (10th Cir.1980); *Naraine v. Western Electric Co., Inc.*, 507 F.2d 590 (8th Cir.1974); *Sethy v. Alameda County Water Dist.*, 545 F.2d 1157 (9th Cir. 1976); *Rajender v. University of Minnesota*, 24 Fair Empl.Prac.Cas. (BNA) 1051 (D.Minn.1979); *Jawa v. Fayetteville State University*, 426 F.Supp. 218 (E.D.N.Y.1976). *But see Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 272 (9th Cir.1981).

Plaintiff in his complaint alleged that he is of East Indian ancestry and that he was discriminated against on the basis of his racial identification. In view of the interrelated nature of national origin, ethnic and racial discrimination found by the courts, *see Garcia v. Rush-Presbyterian-St. Luke's Medical Center,* 80 F.R.D. at 263, an allegation of East Indian ancestry coupled with an allegation of racial discrimination is sufficient to properly bring the complaint within the ambit of section 1981. These two allegations clearly imply that the plaintiff believes he was discriminated against because he is classified as a nonwhite due to his East Indian ancestry. That is enough. In *Carrillo,* plaintiff did not allege racial discrimination coupled with her allegation of being a Hispanic, so no such inference could be drawn. In addition, requiring the alleging of a specific race without any consideration of the other factors seems to imply rigid racial classifications for the purposes of section 1981, classifications already rejected by the court. *See Ortiz v. Bank of America,* 547 F.Supp. at 561–62.

■■■ Defendant also argues that the statute of limitations has run on plaintiff's claims relating to his demotion and salary reduction. A five-year statute of limitations applies to section 1981 actions brought in Illinois. *See Waters v. Wisconsin Steel Works of International Harvester Co.,* 427 F.2d 476, 488 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), (applying Ill.Rev.Stat., ch. 83, § 16 (1967)). Plaintiff filed his complaint on September 29, 1982. Plaintiff's demotion occurred in September, 1976, and the reduction of his salary occurred in January, 1977. Both claims occurred over five years before the filing of the complaint. These claims, therefore, cannot be the basis for imposition of liability. The court, however, will look to the prelimitation period as relevant evidence regarding Time's motivation for its discharge of Banker. *See Aponte v. National Steel Service Center,* 500 F.Supp. at 203.

*Abstention Issue*

Defendant finally asks this court to abstain in deciding this case in deference to a state court suit filed by plaintiff in September, 1979. In that state court action plaintiff is also seeking relief for his demotion, salary reduction and termination. Apparently, plaintiff's complaint and amended complaint were dismissed by the state court on Time's motion. A second amended complaint seems to be still pending. Defendant seeks dismissal of the federal action based upon considerations of efficient judicial administration and conservation of scarce judicial resources as enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

■■ In *Colorado River,* the Supreme Court stated that there was a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817, 96 S.Ct. at 1246. The Court held that only exceptional circumstances permit the dismissal of a federal suit due to the presence of a concurrent state proceeding. *Id.* at 818, 96 S.Ct. at 1246. The decision whether to dismiss is not based upon a "mechanical checklist," but is instead flexible and open-ended. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* — U.S. —, 103 S.Ct. 927, 937, 74 L.Ed.2d 765, 780 (1983). In making this determination a court may consider, among other factors, the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained, the inconvenience of the forum and the possibly vexatious nature of the suit. *Colorado River Water Conservation District v. United States,* 424 U.S. at 818, 96 S.Ct. at 1246; *Voktas, Inc. v. Central Soya Co., Inc.,* 689 F.2d 103, 106–7 (7th Cir.1982).

The Seventh Circuit adheres to the *Colorado River* rule that "a federal suit should not be stayed or dismissed because of a pending parallel state suit except on the clearest of justifications." *Evans Transport Co. v. Scullin Steel Co.,* 693 F.2d 715, 719 (7th Cir.1982). In *Evans* the court

vacated the dismissal of a federal action in deference to a concurrent state action. The district court found that the state court action was filed a month before the federal action and that the state court was a more convenient forum. The Seventh Circuit found these circumstances insufficient justification to warrant dismissal in light of a federal court's obligation to exercise its jurisdiction. The Seventh Circuit in *Bio-Analytical Services v. Edgewater Hospital*, 565 F.2d 450 (7th Cir.1977), held that dismissal of a Federal Arbitration Act case in deference to a pending state court case was improper in view of the important federal interest in enforcement of the Act. *See also Voktas, Inc. v. Central Soya Co., Inc.*, 689 F.2d 103 (7th Cir.1982). Though in *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531 (7th Cir.1982), the Seventh Circuit did order a district court to stay federal proceedings in deference to concurrent state litigation, that decision was based upon exceptional circumstances. First, the court found the *Colorado River* balance tipped heavily towards dismissal due to lack of a federal interest, ability of the state court to adequately handle the litigation and the waste of resources in maintaining two actions. *See Voktas, Inc. v. Central Soya Co., Inc.*, 689 F.2d at 105, n. 6. Second, plaintiff in the federal action had the option as defendant in the state court action to remove the state court action to a federal court. Instead, a federal suit in a different district was filed. The court held that not staying the federal action would allow parties to pick and choose among different federal forums. *See Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d at 719.

 In light of *Colorado River* and the recent Seventh Circuit cases, this court refuses to dismiss the federal action. There is no possibility of piecemeal litigation here and no indication that the Illinois courts are a more convenient forum. In addition, the Illinois court's dismissal of plaintiff's first two complaints indicates that full adjudication of plaintiff's claims might be unavailable in state court. Finally, unlike *Microsoftware*, there is a strong federal interest in seeing that discrimination cases under section 1981 be adjudicated in federal court. *See Bio-Analytical Services, Inc. v. Edgewater Hospital Inc.*, 565 F.2d at 454.

For the foregoing reasons, defendant's motion to dismiss is denied as to all plaintiff's claims arising from incidents occurring outside the five-year statute of limitations.