**Jonah OXMAN, on behalf of himself and numerous others who are similarly situated, Plaintiff,**

v.

**WLS–TV, Defendant.**

**No. 84 C 4699.**

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1984.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Daniel J. King, Richard C. Bollow, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Jonah Oxman ("Oxman") has brought this class action against his former employer WLS–TV ("WLS") alleging religious and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("the ADEA"). WLS has asked that the Court dismiss the complaint or at least strike Oxman's class allegations. For the reasons stated below, WLS's motion is denied.

### 1. *Facts*

The facts recited below are taken from the complaint, which we assume to be true for the purposes of this opinion. Oxman, a 61 year old Jewish man, worked for WLS from July 1967 until January 27, 1984, when he was discharged. Shortly after being fired, Oxman filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On the EEOC form titled "Charge of Discrimination," Oxman checked the boxes for "religion" and "other" (for "age") as the types of discrimination he was charging. The complete text of the "particulars" of his charge stated:

1. On the above date my 16½ years of continuous employment with the employer was involuntarily terminated.

Said action was religious and/or age based. My religion is Jewish. My age is 60.

2. The above discriminatory employment practice against me is part of a current pattern of discriminatory conduct against employees similarly situated based upon religion, race, and age.

On May 8, 1984, the EEOC sent Oxman a "right to sue" notice, and he filed the two-count complaint in this action on June 4, 1984.

Oxman's complaint is about as brief and conclusory as his EEOC charge. Count I defines a purported plaintiff class of "Jewish and Black individuals employed by ... WLS–TV, in various management, on-camera, or other positions exempt from the unit of employees represented in collective bargaining pursuant to the Labor-Management Relation Act." Oxman then copies without factual support, the four requirements for class certification of Fed.R.Civ.P. 23(a). Finally, he alleges that WLS discharged him on January 27, 1984, because he is Jewish, and that his termination was part of a WLS policy and practice of terminating or "constructively" terminating employees because of religion and race. Oxman also alleges that WLS has a discriminatory policy with respect to job assignments, although his EEOC charge contained no such explicit allegations. Finally, in Count II Oxman raises an individual claim that WLS fired him because of his age, violating the ADEA.

WLS's motion to dismiss can be divided into four general issues. The first two contentions challenge our subject matter jurisdiction: first, WLS argues that Oxman's allegations of discrimination based on race and job assignments exceed the scope of his charge to the EEOC, and thus he has not exhausted his administrative remedies with respect to those claims. Second, WLS asserts that Oxman, a White, lacks standing to raise a claim of discrimination against Blacks. Next, WLS postures its motion as one under Fed.R.Civ.P. 23(c)(1) and asks that the Court strike Oxman's class allegations for not complying with the prerequisites of Rule 23. Finally, WLS attacks Oxman's age discrimination claim, arguing that his complaint fails to allege all of the essential elements of an ADEA claim. We will consider WLS's arguments in order.

## 2. *Exhaustion*

The parties agree that the Seventh Circuit's *en banc* opinion in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164 (1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), defines how this Court should approach the exhaustion issue. *Jenkins* held that we should not dismiss allegations of discrimination so long as they are " 'like or reasonably related to the allegations of the [EEOC] charge and grow [...] out of such allegations.' " *Id.* at 167, *quoting Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971). It is well established that this "like or reasonably related" test is broad and liberal, as it grows out of the policy of being "solicitous of the Title VII plaintiff." 538 F.2d at 168 (citations omitted); *see also Bowie v. Veteran's Administration*, 565 F.Supp. 81, 84 (N.D.Ill.1983) (Shadur, J.); *Aponte v. National Steel Service Ctr.*, 500 F.Supp. 198, 201 (N.D.Ill. 1980) (Moran, J.); *Petty v. Peoples Gas Light and Coke Co.*, 86 F.R.D. 336, 341–342 (N.D.Ill.1979) (Bua, J.). But a countervailing consideration sets a boundary for this liberal policy: the EEOC serves a conciliatory function and when a plaintiff's complaint exceeds the scope of an EEOC charge, it denies the EEOC a chance to mediate between the parties. *See, e.g., Carter v. Container Corporation of America*, No. 79 C 3786, slip op. at 3 (N.D.Ill.1980) (Aspen, J.). This respect for exhaustion no doubt underlies the "reasonably related" test, which can be viewed as ensuring some initial EEOC involvement with a discrimination claim while removing technical obstacles from a Title VII plaintiff's path to federal court. Essentially,

the *Jenkins* test parallels the concept of notice pleading under Rule 8 and requires that the EEOC be put on general, broad notice of a claim.

With this standard in mind, we can easily dispose of WLS's argument that Oxman's allegation of race discrimination is not "like or reasonably related to" his EEOC charge. The EEOC charge explicitly alleges that WLS has a discriminatory policy based on race. Oxman's complaint is plainly "reasonably related" to the EEOC charge on that score,[1] and the EEOC certainly had general notice of that claim. Of course, Oxman's allegation of race discrimination raises a host of other issues, which we discuss in the next two sections.

WLS's argument that Oxman's allegation of discriminatory job assignments exceeds the scope of the EEOC charge is more difficult. Unlike the race allegation, job assignments are not mentioned in the EEOC charge. Oxman concedes, and we agree, that a discriminatory pattern of job assignments not connected to a general discharge policy falls outside the scope of his EEOC charge. But Oxman argues that WLS has aimed its job assignment practices at the purported class of Blacks and Jews as part of its overall plan of discharging class members. In effect, he argues that the job assignment policy is one of WLS's means to its end of discharging class members. Oxman implies that because the assignment scheme is a component of the broad race and religion policy,

it is reasonably related to the EEOC charge which does mention that policy. Oxman stretches the *Jenkins* test to its limit, but given the breadth of the *Jenkins* standards, we hold that the allegation of job assignment discrimination is like or reasonably related to the EEOC charge of classwide discrimination.[2] *See Aponte v. National Steel Service Ctr.*, 500 F.Supp. 198, 201 (N.D.Ill.1980) (*Jenkins* satisfied where court can construct a set of facts which can show a reasonable relation between the charge and the complaint); *Bowie v. Veteran's Administration*, 565 F.Supp. 81, 84 (N.D.Ill.1983) (although plaintiff's EEOC charge did not mention performance evaluations, it did mention promotion policy and thus *Jenkins* was satisfied because performance evaluation was one component of the accused policy). As in *Aponte*, the court has constructed a set of facts showing a reasonable relation between the job assignment allegation and the broad EEOC allegation; similarly, as in *Bowie* the present allegation of job assignments is one component of the policy accused in the EEOC charge.[3] In sum, we hold that Oxman has exhausted his administrative remedies.

### 3. *Standing*

WLS's second challenge to the Court's jurisdiction states that Oxman, a White, lacks standing to raise the claim of race discrimination. As WLS points out, standing is an issue of constitutioal dimen-

---

1. WLS makes much of the fact that Oxman did not check the box marked "race" on the EEOC form. This omission is not fatal, as the facts of *Jenkins* make clear. 538 F.2d at 168 (plaintiff's failure to check box for "sex" in EEOC charge not fatal because the particulars of her charge could be fairly read to allege sex discrimination). As the Fifth Circuit has punned:
   [W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.
   *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir.1970).

2. We emphasize that this allegation satisfies *Jenkins* only so long as the job assignment scheme forms an integral part of a general discharge policy aimed at the purported class. The com-

plaint alleges the job assignment policy in more general terms, but our opinion here construes the meaning of that allegation narrowly. We also note that this exhaustion issue is jurisdictional in nature. Should discovery reveal that a discriminatory job assignment policy exists, but is unrelated to the alleged discharge policy, WLS may renew its motion to strike the job assignment allegation.

3. Our unpublished opinion in *Carter v. Container Corp. of America*, No. 79 C 3786 (N.D.Ill. 1980), relied upon by WLS, is not on point. The charges which Carter had omitted in the EEOC but raised later in her complaint were not components of a broader comprehensive scheme, as alleged in this case. Rather, they were allegations of distinct types of discrimination practiced on her as an individual.

sion, as it touches the Article III judicial power:

> [T]he standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf. [Citations omitted.] The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...." [Citation omitted.]

*Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). We agree with WLS that normally Oxman would have no standing to claim that WLS had discriminated against Blacks; their injury does not injure him directly.[4] *See, e.g., Badillo v. Central Steel & Wire Co.*, 495 F.Supp. 299, 305 (N.D.Ill.1980) (Shadur, J.) (white, hispanic male lacks standing to assert claims based on discrimination against women and Blacks). However, Oxman asserts that WLS fired him as part of a comprehensive plan directed at both Blacks and Jews. Assuming this to be true, the "putatively illegal action" did work on actual injury on him, and he has standing to raise the race discrimination claim. As in the exhaustion context, we emphasize that this holding rests on the assumption that Oxman was fired as part of a single, comprehensive plan. This is the fact that distinguishes this case from the cases WLS cites. In addition, we note that this holding only addresses the Article III standing issue; the Court does not imply that Oxman, as a White, will necessarily satisfy the requirements of Rule 23(a) for class certification.

**4.** *But cf. Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972) (white tenants have standing under Title VIII of Civil Rights Act to allege discrimination against black tenants, because they are denied "important benefits from interracial associations").

*4. Opposition to Class Certification*

WLS has styled its opposition to class certification under Rule 23(c)(1) as a "motion to dismiss." Essentially, it challenges the class action allegations of the complaint, and we will treat this part of its motion as one to strike the class allegations.

The parties' memoranda skirmish over whether a Rule 12 motion is a proper method to oppose class certification. Oxman has not yet moved for class certification and has only begun discovery to substantiate his class allegation. The class allegations of his complaint are skeletal, as they do little more than recite the requirements of Rule 23(a). Oxman predicts that discovery will add muscle to the skeletal class allegations. WLS argues that the class allegations are themselves deficient, and we need not wait for discovery to deny class certification.

█ Neither party argued in terms of Rule 23(c)(1), which commands the Court to rule on class certification "as soon as practicable after the commencement of an action brought as a class action." A "practicable" time varies from case to case, and the district court has broad discretion to determine when the time is ripe. *See generally* 7A C. Wright and A. Miller, *Federal Practice and Procedure: Civil*, § 1785 (hereafter cited as "Wright & Miller"). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). While WLS raises some valid concerns about the appropriateness of class certification, we believe that its motion is,

for the most part, premature.[5] The lawsuit is in its infancy, as WLS has not filed an answer or responded to Oxman's initial discovery requests. Virtually all of the cases cited by WLS concern challenges to class certification brought later in a suit, usually on a motion for class certification relying upon some affidavits and discovery. Oxman should be given a short amount of time to add meat to his class allegations. *See, e.g., Eggleston v. Chicago Journeymen Plumbers,* 657 F.2d 890, 895 (7th Cir. 1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).

We emphasize that our holding that it is too early to deny class certification does not necessarily mean we will later certify a class. WLS does raise some valid concerns which will have to be addressed in a forthcoming motion for class certification. For instance, the class definition in the complaint (Count I, ¶ 2) might prove to be too broad, as it seems to include WLS's policy makers, as well as those employees affected by the alleged policy. We also wonder whether WLS's alleged policy can have adversely affected enough Blacks and Jews to satisfy the numerosity requirement of Rule 23(a). Finally, WLS legitimately questions whether Oxman, a White, can alone prove to be an adequate representative for a class which purportedly includes many Blacks.

We anticipate that the parties will move expeditiously to complete discovery concerning class certification. Accordingly, Oxman is ordered to move to certify the class on or before the next status hearing of this Court on October 26, 1984, at 10:30 a.m., assuming, as we do, that WLS will cooperate fully in discovery. We also expect that the parties will expeditiously complete discovery on the merits of the complaint, with an eye to a possible motion for summary judgment shortly after the class certification issue is resolved.

### 5. The ADEA Claim

WLS argues that Count II of Oxman's complaint fails to state a claim for relief under the ADEA because it does not allege all of the elements of a *prima facie* case.[6] The relevant paragraph of the complaint merely alleges: "On or about January 27, 1984, Plaintiff, Jonah Oxman, was terminated by Defendant WLS–TV on the basis of his age which was 60." Despite the brevity of the complaint, we believe it satisfies the minimal standards of notice pleading of Fed.R.Civ.P. 8(a)(2).[7]

It is well established that a court should not grant a motion to dismiss unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* — U.S. —, —, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 79 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We must take as true, moreover, all material allegations of fact in the complaint. With

---

**5.** Our decision here in part rests on the sound principle that early in the action the court should try to uphold the availability of the Rule 23 procedure. "[I]f there is to be an error made, let it be in favor [of] and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of trial so require." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Lewis v. Goldsmith,* 95 F.R.D. 15, 18 (D.N.J.1982); Wright & Miller, § 1785. Since we are not certifying a class now, it is even more appropriate to keep the Rule 23 avenue available at this stage of the lawsuit.

**6.** In general, a plaintiff may make out a *prima facie* case of age discrimination by proving the following four elements:

(1) The plaintiff is within the age group protected by the ADEA;
(2) He was doing satisfactory work;
(3) He was discharged despite the adequacy of his work; and
(4) After he was discharged, his position remained open and the employer continued to seek applications from persons of plaintiff's qualifications.

*Smith v. World Book-Childcraft International, Inc.,* 502 F.Supp. 96, 99 (N.D.Ill.1980); *see also Huhn v. Koehring Co.,* 718 F.2d 239, 243 (7th Cir.1983).

**7.** Rule 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

these lax standards in mind, we consider WLS's attack on Count II of Oxman's complaint.

Plaintiff alleges that he was fired "on the basis of his age," sixty. This alone is adequate, as it tracks the relevant language of the ADEA, which provides that an employer shall not "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). The four elements which WLS cites are not mandated by statute; nor does WLS point to any cases which hold that the elements must be listed in a complaint. The elements are judicially created, originating in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See also Monroe v. United Air Lines, Inc.,* 736 F.2d 394, 403 (7th Cir.1984) (*McDonnell-Douglas* applies to the ADEA). If a plaintiff satisfies the four elements, he or she is entitled to an inference—based on common sense—of unlawful discrimination. But that does not mean that a plaintiff must always prove all four elements to prevail. *McDonnell-Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824. The *McDonnell-Douglas prima facie* case is neither "rigid, mechanized or ritualistic," *Furnco Construction Corp. v. Walters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), nor the exclusive method for proving a claim of discrimination. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). As the First Circuit has stated:

> We think too that an individual complainant in some cases may be entitled to his day in court without having proven each element of the *McDonnell Douglas* prima facie case—as, for example, where he has presented direct evidence (other than the *McDonnell Douglas* elements) that supports an inference of discrimination. In short, *McDonnell Douglas* points to one, but surely not the only, way of establishing a legally sufficient prima facie case and of organizing and analyzing the evidence in a private discrimination case.

*Loeb v. Textron,* 600 F.2d 1003, 1017 (1979) (footnote omitted). Because Oxman does not necessarily have to prove the four elements later in the case, we believe that Oxman is not required to allege them in his complaint.

WLS's argument confuses the minimum of what is usually necessary to survive a directed verdict or summary judgment motion with the minimum of what needs to be alleged in a complaint. It is conceivable that Oxman may later prove a set of facts entitling him to relief, under either a *McDonnell Douglas* theory or under a more direct theory. *Cf. Horne v. New England Patriots Football Club,* 489 F.Supp. 465, 468–69 (D.Mass.1980) (plaintiff's failure to allege facts supporting *prima facie* case not fatal, as it was not beyond doubt that he could prove no set of facts to support his claim). Accordingly, we deny WLS's motion to dismiss Count II.

### 6. Conclusion

WLS's motion to dismiss is denied. We also decline to deny class certification or strike the class action at this time. Discovery on the issue of class certification is to proceed forthwith and with all due diligence. Plaintiff is directed to file his motion for class certification, with supporting brief, on or before the next status hearing of the Court, which is hereby set for October 26, 1984, at 10:30 a.m. It is so ordered.