**In re Carl FABER and Sylvia Faber, Debtors.**

**Bankruptcy No. 81 B 5868.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 6, 1985.

Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for debtors.

Teller, Levit & Silvertrust, P.C., Chicago, Ill., for Chicago Moving Picture Operators Union Local 110, claimant.

### MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the Objection to Allowance of Claim filed by the Debtors, CARL FABER and SYLVIA FABER, represented by NACHMAN, MUNITZ & SWEIG, LTD., and upon the Response thereto filed by CHICAGO MOVING PICTURE OPERATORS UNION LOCAL 110 [Claimant], represented by TELLER, LEVIT AND SILVERTRUST, P.C., and the Court, having reviewed the record in this case and having examined the memoranda of law filed by the parties in support of their respective positions, and having afforded the parties an opportunity for hearing and being fully advised in the premises:

The Court Finds:

1. On May 15, 1981, Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

2. Debtor, CARL FABER, is the sole shareholder, President and Chief Operating Officer of NORMAL THEATRE CORPORATION [Normal].

3. Prior to May 15, 1981, Claimant and Debtor, CARL FABER, entered into a series of collective bargaining agreements. By virtue of the provisions contained in these agreements, Normal obligated itself to make certain dues and welfare contributions to Claimant to be held and disbursed by Claimant for the benefit of Claimant's members (Normal employees). Pursuant to these agreements, Normal withheld three percent (3%) of the gross weekly pay of its employees.

4. Despite the fact these amounts were withheld from the employees' wages, the funds were never turned over to Claimant's union. Thus, on September 30, 1981, Claimant filed proof of an unsecured claim against Debtor, CARL FABER, in the amount of $5,042.10 for the union dues and the welfare contributions allegedly due from Normal to Claimant.

5. On May 13, 1982, Debtors objected to the allowance of the claim. The Debtors filed a Memorandum in Support of its Objection on April 22, 1983. The essence of the Objection filed by Debtors is that Normal, and not CARL FABER, is liable to

Claimant and that even if Faber is individually liable, that liability is a general unsecured obligation not entitled to priority status.

6. Claimant responded to Debtor's Objection on June 2, 1982. Claimant filed a Memorandum in Support of its Response on September 14, 1982. Claimant asserts that the failure of Normal to turn over funds withheld from Claimant's members constitutes a violation of Illinois' Wage Payment and Collection Act, giving rise to a private right of action against the employer, Carl Faber. Claimant also argues that its claim is entitled to priority status under section 507(a)(4) of the Bankruptcy Code, by reason of the Debtor, CARL FABER's, failure to pay contributions to Claimant's employee benefit plans.

7. Claimant submitted a Reply Memorandum to the Debtors' Support Memorandum on June 2, 1983. The Debtors filed a Memorandum in Response to Claimant's Reply on June 10, 1983.

The Court Concludes and Further Finds:

■ 1. The Wage Payment and Collection Act [Act], Ill.Rev.Stat. ch. 48, par. 39m–1 et seq (1983) sets forth a mechanism for nongovernmental employees of the State of Illinois to recover the payment of wages[1] due from their employers. The Debtors challenge the Claimant Union's ability to assert a claim for wage supplements under the Act, arguing that the Act is only enforceable by the Department of Labor and does not provide a private right of action. The Court disagrees. Section 11 of the Act expressly provides that "[n]othing here shall be construed to prevent any employee from making complaint or prosecuting his own claim for wages." Ill.Rev. Stat. ch. 48, par. 39m–11 (1983). This statutory provision has been interpreted by a federal district court not to preclude a private right of action by an employee. *Aponte v. National Steel Service Center,* 500 F.Supp. 198 (N.D.Ill.1980). In *Aponte,*

Judge Moran concluded that the plain meaning of section 11 belied any contention that the enforcement of the Act's provisions was limited to the Department of Labor. 500 F.Supp. at 203–04. The Court follows this interpretation.

2. Section 14 of the Act provides in relevant part:

> Any employer or any agent of an employer, who, being able to pay wages, final compensation, or wage supplements and being under a duty to pay, wilfully refuses to pay as provided in this Act, or falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself or other person any underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due, upon conviction, is guilty of a class C misdemeanor ...

Ill.Rev.Stat. ch. 48, par. 39m–14 (1983). Section 14 read in conjunction with section 11 thus grants an employee an implied private right of action if (1) an employer (2) who has an ability to pay wage supplements (3) wilfully refuses to pay (4) with an intent to deprive its employees of their wage supplements.

■ 3. With respect to the first prong noted above (employer), section 13 of the Act states that "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of the Act shall be deemed to be the employers of the employees of the corporation." Ill.Rev.Stat. ch. 48, par. 39m–13 (1983). The Debtor, Carl Faber, in his capacity as President and Chief Operating Officer of Normal Theater Corporation, entered into a collective bargaining agreement with the Claimant Union. As a result of his involvement in the formulation of these collective bargaining agreements, the Debtor, Carl Faber, not only knew that 3% of the gross weekly earnings of Normal's

---

1. Section 2 of the Act states that "[w]here an employer is legally committed through a collective bargaining agreement or otherwise to make contributions to an employee benefit, trust or fund on the basis of a certain amount per ... week, the amount due from the employer to

such employee benefit trust or fund shall be defined as 'wage supplements,' subject to the wage collection provisions of this Act." The Debtors' alleged failure to pay contributions to the Claimant Union's employee benefit plans brings them within the scope of the Act.

employees were being withheld, but he also knew that these withheld funds were not being turned over to the Claimant Union. Accordingly, the Court concludes that the Debtor, Carl Faber, is the "employer" of Normal Theater Corporation as used in the Illinois Wage Payment and Collection Act.

■ 4. The Court further concludes that the Claimant has met its burden of establishing that the employer, Carl Faber, was able to pay and that he wilfully refused to pay with the requisite intent to deprive Normal's employees of their wage supplements. The Court rejects the Debtor's position that as a result of the failure of Normal's business, its lack of sufficient operating funds, and the ultimate filing of its Chapter 7 bankruptcy case, the employer was unable to pay at the time he was allegedly required to make payment of the sums claimed by the Union. The Debtor cites *People v. Chaindrive Corporation,* 49 Ill.App.3d 564, 7 Ill.Dec. 427, 364 N.E.2d 588 (1977), to support his position with regard to ability and wilful refusal to pay. In *Chaindrive,* the court found that the employer in both cases was unable to pay because the employer had just commenced business and did not have sufficient funds to meet its payroll. The present case is distinguishable, however, because here the Debtor made sufficient deductions in order to make the contributions to the Claimant Union. Thus, the Debtor could have remitted that money to the Union rather than using the fund for Normal's business operations.

The Debtor also contends that the inability of Normal to pay the claim in question negates the essential element of wilfulness. The Court is not persuaded by this reasoning. Because the employer had the ability to pay, his failure to pay in accordance with the agreement resulted in a conversion of the fund in question, thus constituting a fraud on Normal's employees.

5. Since the Claimant Union states a claim within the purview of the Illinois Wage and Payment Collection Act, the Court must now address the status of this unsecured claim. Debtor contends that the claim should be deemed a general, unsecured claim. Claimant argues that the claim is entitled to priority status under section 507(a)(4) of the Bankruptcy Code, by reason of the Debtor's failure to pay contributions to the Claimant Union's employee benefit plans.

■ 6. Section 507(a)(4) of the Bankruptcy Code governs priority status of claims for contributions to employee benefit plans and provides in relevant part:

(a) The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims for contributions to employee benefit plans—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first ...

Debtor claims that although it may have been the Illinois Legislature's intent to impose liability under certain conditions upon an officer or agent of a corporation as if they were the employer, section 507(a)(4) was not intended to permit an unsecured claim against such an officer or agent to attain priority status under the Code. Debtor argues that if Congress intended such a result, it would have explicitly stated as such as it did with respect to section 507(a)(7)(c), which specifically grants priority status to "a claim for taxes required to be collected or withheld for which the debtor is liable in whatever capacity." The Court is not persuaded. The Debtor has not cited and the Court has not found any authority which supports this interpretation of section 507(a)(4). Section 507(a)(4) explicitly provides for the priority treatment of contributions to employee benefit plans. Since a private right of action exists in favor of the Claimant Union under section 14 of the Illinois Wage and Payment Collection Act, by reason of the Debtor, Carl Faber's, failure to pay contributions to the Union's employee benefit plans, the Court concludes that the Union's unsecured claim against the Debtor, Carl Faber, is entitled to priority under section 507(a)(4) of the Bankruptcy Code.

7. Section 507(a)(4)(B) places a limit on the amount allowable for an unsecured

claim for contributions to an employee benefit plan. There is insufficient evidence in the record, however, to determine whether the amounts withheld by the Debtor arising from services rendered by the Claimant's members within 180 days before the filing of the bankruptcy petition are subject to this limitation. Therefore, an additional hearing is required to determine whether the Claimant Union's priority claim is subject to the limitations of section 507(a)(4).

8. This cause constitutes a core proceeding as defined by section 157 of title 28 of the United States Code.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Objection of Debtors, CARL and SYLVIA FABER, to the CHICAGO MOVING PICTURE OPERATORS UNION LOCAL 110 Allowance Of Claim be, and the same is hereby overruled in part, as set forth in this Memorandum Opinion and Order.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a status hearing be, and the same is hereby set for Oct. 15, 1985, at 10:00 a.m.